## The People of the State of Illinois for use of Menard County v. E. R. Oeltjen et al.

1. OFFICIAL BONDS—*No Breach by Depositing Funds in a Bank.*—A county treasurer commits no breach of his official bond by depositing the public funds in a bank. He can keep the money where he chooses; if he accounts for it when legally called on, his duty is discharged.

2. COUNTY TREASURER—*Custody of Funds by Agents—Banks.*— Where a county treasurer deposits the public money in a bank, the bank becomes his agent and the custody of the money by such bank is the custody of the treasurer. In a suit upon his official bond it is no defense by his sureties to say that the bank was unable to pay.

3. SAME—*To Deposit Moneys Where He Deems Best.*—It is the business of a county treasurer to take care of the public money, and to place it in such custody as he may deem best. All the law requires is that he have it forthcoming when legally called upon, and until he fails to do so he commits no breach of his official bond.

4. SAME—*Responsibility of Sureties upon New Bonds.*—Where a new bond is given by the county treasurer, the responsibility for public money which is in his custody, though previously deposited in a bank, and which he had not been required to pay out according to law, rests upon the new bond.

5. SAME—*Effect of a Failure to Give a New Bond.*—Where a county treasurer is required to give a new bond, under chapter 103, R. S., and fails, his official term is ended, and the sureties upon the old bond have the right to take possession of his official effects; but by the giving of the new bond the official term is continued, and the sureties upon the old bond are prevented from taking any steps to realize upon the official assets.

6. SAME—*Effect of Giving a New Bond.*—Where a county treasurer is required, under the provisions of section 10, chapter 103, R. S., to give a new bond or surrender his office, the giving of such bond and the continuance of his official tenure correspond in effect to another term with its incidents. In such case the law transfers the funds and effects on hand under the old term to the new.

7. SAME—*New Bond—Funds in Hands of Custodian.*—The effect of giving a new bond by a county treasurer under section 10, chapter 103, R. S., is to transfer balances, and if the funds are in the hands of his custodian, the matter of giving proper attention to the changing or continuing such custody arises at once, and the action done or omitted will attach to the new liability.

**Memorandum.**—Action on county treasurer's bond. In the Circuit Court of Menard County; the Hon. CYRUS EPLER, Judge, presiding. Declaration in debt; the pleas are stated in the opinion of the court; trial by the court without a jury; finding and judgment for defendants; appeal by plaintiff. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed October 29, 1894.

T. W. McNEELY and CHAS. NUSBAUM, attorneys for appellants.

N. W. BRANSON, attorney for appellees.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was an action of debt on the official bond of Oeltjen as treasurer of Menard county. The cause was tried by the court, a jury being waived, and judgment was for defendants, from which the county has prosecuted this appeal.

The bond in question was given in pursuance of Sec. 10, Chap. 103, R. S., the sureties on a former bond wishing to be released from further liability, having given notice under the statute for that purpose.

It bore date October 19, 1893, and was conditioned as required by law, that the principal should perform all the duties which were or might be required by law to be performed by him as treasurer of said county of Menard, in the time and manner prescribed or to be prescribed by law, and when he should be succeeded in office, should surrender and deliver over to his successor in office all books, papers, moneys and other things belonging to said county and appertaining to said office.

The breach alleged was, that, having the funds of the county in his hands amounting to the sum of, to wit, $10,000, the said Oeltjen had refused to pay out the same upon the order of the county board, as required by law and the condition of the bond.

The pleas were *non est factum*, performance, and a third plea by the sureties that the misappropriation of the funds complained of had been committed before the giving of the bond in suit, and while the former bond was in force, and that when the second bond was given, he had none of said funds in his hands.

This last plea was drawn to cover the real defense, which was, in substance, that the money belonging to the county had been deposited by the treasurer in the bank of one Strodtmann; that such deposit had been mainly, if not wholly, before the bond in suit was executed, and that the bank was then, and for some time had been insolvent, and did, on the 15th of November (about four weeks after the execution of the bond), suspend payment and make an assignment for the benefit of creditors.

The reason assigned by the treasurer for not paying the county orders was that he had deposited the funds with this bank, and that the bank could not pay him, and the sureties say that as the bank was in fact insolvent and could not have paid all the liabilities when the bond was given, the default occurred while the old bond was in force.

It is not shown that the treasurer failed to pay any orders drawn upon him before the present bond was given.

The only breach alleged was committed afterward, and the plea of the surety is in effect that the principal was unable to pay the orders in question because he had placed his funds in a bank which, as now appears, had been insolvent for some time before this obligation was assumed.

The bank paid all checks up to the time it made the assignment, and no doubt the treasurer could have drawn out his funds after this bond was given.

He had not converted the money to his own use. He had merely put it in what proved to be an unsafe place. His agent was insolvent and could not meet all engagements.

The treasurer committed no breach of his bond by depositing the funds in a bank. He could keep the money where he chose, and if he accounted for it when legally called on, his duty was discharged.

Suppose he had paid these orders and all others up to the amount of public funds received; he could not have been held civilly or criminally, because he had lost a sum equivalent to all he had received, by the failure of this bank. Suppose the bank was insolvent at some date prior to the execution of this bond; it might have become solvent afterward, or, whether solvent or not, it might have paid this depositor in full, as it did many others.

For all that appears the treasurer may have had abundant property from which to meet his obligations to the county, though he had no cash in hand. In effect, the defense here set up raises the immaterial issue whether the treasurer was able to do so without the money lost in the bank.

The breach is that he failed to pay the orders; the defense

is that he could not have paid them, say sixty days before, if the bank had then been compelled to liquidate; and stated another way, it is that his agent was unable to account to him, and had really been insolvent during all the life of this bond.

What of it? There had been no orders drawn on the treasurer which he had failed to pay until after this bond was given. There had been no conversion by the treasure nor failure to meet his official obligation, and whatever might have been the financial condition of the bank it need not follow that the treasurer would fail to account for the funds when, and as by law, required.

In a legal sense, the money was in his hands all the while, though the personal custody of it had been by him intrusted to an agent who failed to account to him for it when he had occasion to use it in discharge of his official obligation.

The fallacy of the position of the appellees is in assuming that the money had been misappropriated while the first bond was in force, and that no breach of the bond was shown by proving that he failed to pay orders issued after this bond was made.

We hold that the custody of the money by his agent was his custody, and if he chose to have it there his surety can not be heard to say that the agent would have been unable to pay.

It was the business of the treasurer to take care of the money and to place it in such custody as he might deem best. All the law requires is that he have it forthcoming when legally called upon, and until he fails in this respect he has committed no breach of this condition of the bond.

There was no misappropriation nor any wrongful use of the money nor any breach as to the payment of the same during the continuance of the old bond.

It is argued by counsel for appellees that by the terms of section 11, chapter 103, the sureties on the old bond are released from liability incurred by the officer in consequence of business coming to his hands after the new bond is approved, but that they are not released from liability pre-

viously incurred, and therefore the responsibility is under the old bond because it is supposed the money was received and lost while the old bond was in force.

In effect the act of keeping the money in the bank was a continuing act. Each day the mind of a prudent man would consider the advisability of continuing the custody of his funds in the place where they had been formerly kept, or at any rate the mental process would be in substance that, unless some objection was apparent, no change need be made. When this new bond was given, the responsibility for money which he had previously deposited in the bank, and which he had not been required to pay out according to law, would rest upon the new bond.

Had this bond not been given, the treasurer's official term would have been cut off and the sureties on the old one would have had the right to take possession of his official effects, and they might have withdrawn this deposit as did many others, before the crash; but by the giving of the new bond the official term was continued and the old sureties were prevented from taking any steps to realize upon the official assets.

Thus, it is apparent that the sureties on the new bond have by their action made it inequitable and unjust for them to deny responsibility for the continuing acts of the official whose term would have otherwise come to an end.

Having thus deprived the sureties on the old bond of the opportunity and the means to withdraw the money from a bank which kept going for nearly a month, they can not be heard to say that the bank was then insolvent and therefore probably the money could not have been obtained.

While the law will regard the liability of sureties strictly, yet it will not favor one surety over another in this way.

Where, under the provision of section 10 of chapter 103, the officer is required to give a new bond or surrender his office, the giving of such bond and the continuance of his official tenure correspond in effect to another term with its incidents.

In such case the law transfers the funds and effects on

hand under the old term to the new. So, in the present case, when the new bond was given, the law would transfer any balance and the new bond would secure it. If the money was not in the pocket of the official but in the hands of his custodian, the duty of giving proper attention to the matter of changing or continuing the depositary would arise at once, and the action, done or omitted, in that regard, would attach to the new liability.

We are of the opinion the judgment for appellee was erroneous. It will therefore be reversed and the cause remanded.